UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN RAYMUNDO HERNANDEZ,<br>Petitioner,<br>v.<br>WARDEN GOLDEN STATE ANNEX, *et al.*,<br>Respondents. | Case No. 1:26-cv-08532-KES-CDB (HC)<br><br>AMENDED FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND TO ORDER PETITIONER'S IMMEDIATE RELEASE<br><br>(A Number: A-242-325-196)<br><br>(Doc. 1, 6)<br><br>**7-Day Objection Period** |

Petitioner Martin Raymundo Hernandez ("Petitioner"), a federal immigration detainee proceeding by counsel, initiated this action on October 18, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241, while in custody of Immigration and Customs Enforcement ("ICE") at the Golden State Annex Detention Facility. (Doc. 1, 6).

**Relevant Background**

Petitioner is a native and citizen of Guatemala. (Doc. 1-3, "Ex. 2") (August 14, 2026, Notice to Appear). In his petition, Petitioner alleges that he has been present in the United States since 1997. (Doc. 1 ¶ 31). He alleges that during his approximately 30 years in the country he has married and fathered three U.S.-citizen children for whom he is financially responsible, and during the past five years, has worked as a landscaper through his own registered company. *Id.* ¶¶ 32, 33. Petitioner applied for asylum on May 17, 2024. *Id.* ¶ 34. On August 13, 2026, Petitioner arrived

at a scheduled asylum interview and was confronted by ICE officers, who handcuffed him and "informed that his paperwork was filed wrong so he would be arrested." *Id.* ¶¶ 5-6, 35. Petitioner was not presented any documentation or warrant of arrest from the arresting immigration authorities. *Id.* ¶¶ 7, 36. The next day, Petitioner was issued a Notice to Appear ("NTA"). *Id.* ¶¶ 7, 37; Ex. 2. Petitioner alleges he was previously denied bond "as having not met his burden with regards to flight." *Id.* ¶ 39.

Respondents timely filed a response to the petition in which they acknowledge that Petitioner's detention is governed by 8 U.S.C. § 1226(a). (Doc. 5 at 1). Respondents also acknowledge that Petitioner was arrested pursuant to an arrest warrant dated the day after his arrest (August 14, 2026), the same day Petitioner was served with the NTA. *Id.* at 12 ("Ex. C") (August 14, 2026, Form I-200). Respondents also proffer documents that Petitioner was provided a custody redetermination hearing on September 25, 2026, and that an immigration judge denied bond because Petitioner "has not met his burden with regards to flight." *Id.* at 17 (Ex. E") (September 25, 2026, order of immigration judge). The order of the immigration judge dated October 20, 2026, reflects Petitioner was denied bond because he unlawfully "entered the United States several decades ago"; his "likelihood of prevailing in relief before this Court to be exceedingly speculative"; "the Court is … left to speculate as to whether any of [his] family members would suffer exceptionally and extremely unusual hardship in the event of his removal"; and therefore Petitioner "is such a significant flight risk that no bond or release conditions … could sufficiently mitigate that risk[.]" *Id.* at 19-21. Petitioner appealed the bond order on October 15, 2026. *Id.* at 23 ("Ex. F") (October 19, 2026, filing receipt for appeal to Board of Immigration Appeals ("BIA")).

**<u>Discussion</u>**

Respondents correctly concede that Petitioner's detention is governed by § 1226(a). *See Rodriguez Vasquez v. Bostock,* 183 F.4th 1160, 1172 (9th Cir. 2026); *see also Padilla v. U.S. Immig. And Cust. Enf't,* -- F.4th --, No. 24-2801, 2026 WL 2822044, at *19 (9th Cir. Sept. 21, 2026) (recognizing that "[n]oncitizens who arrive illegally and are found away from the border well after arrival are protected from arbitrary detention in violation of the Due Process Clause."). Respondents do not dispute any of Petitioner's factual allegations, acknowledge that Petitioner was

not arrested pursuant to a duly issued arrest warrant, concede that Petitioner was not issued an NTA until the day after his arrest, make no argument that his warrantless arrest complied with governing regulations, and advance no argument about the appropriate relief warranted.

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Under 8 C.F.R. § 236.1(b)(1), a noncitizen may only be arrested and detained pursuant to the Form I-200 administrative warrant if it is issued by an authorized individual. *See* 8 C.F.R. § 236.1(b)(1) ("At the time of issuance of the [NTA], or at any time thereafter and up to the time removal proceedings are completed, the [petitioner] may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest. A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter and may be served only by those immigration officers listed in § 287.5(e)(3) of this chapter.").

Separately, immigration officers are authorized to make warrantless arrests in limited circumstances, including when a noncitizen is "entering or attempting to enter the United States in violation of any law or regulation ... regulating the admission, exclusion, expulsion, or removal of aliens," or when the officer has reason to believe the noncitizen is unlawfully in the United States and is likely to escape before an arrest warrant can be issued. 8 U.S.C. § 1357(a)(2); *see* 8 C.F.R. § 287.8(c)(2)(iv) (requiring an arresting officer to comply with 8 C.F.R. § 287.3 in connection with making a warrantless arrest).

Here, Petitioner was arrested by ICE on August 13, 2026, at a scheduled asylum interview because "[t]he subject's asylum application was admin[istratively] closed by USCIS." (Doc. 5 at 5) ("Ex. A"). Petitioner was issued a Form I-200 the day *after* he was arrested and at the time he was served the NTA. These circumstances demonstrate Petitioner was subject to a warrantless arrest. As noted above, Respondents do not argue, and the record does not reflect, any exceptions for a warrantless arrest under § 1357(a)(2) applied to Petitioner's arrest. Accordingly, Petitioner is not properly detained pursuant to section 1226(a), and Respondents have not argued that any other detention authority justifies Petitioner's detention. Therefore, the undersigned finds that Petitioner's detention is not authorized by statute and the appropriate remedy is Petitioner's

immediate release. *E.g., Mayen v. Warden, Cal. City Det. Ctr.*, No. 1:26-cv-02354-DAD-AC, 2026 WL 1158217, at *2 (E.D. Cal. Apr. 29, 2026) (ordering a petitioner's immediate release where government failed to obtain a warrant and, thus, detention was not authorized under § 1226(a)) (citing *inter alia J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025) (ordering the immediate release of a petitioner arrested without a warrant; reasoning that "the government did not comply with the express terms of section 1226 when it detained petitioner, so the Court cannot conclude that he is now detained on that basis.").

Respondents make no argument that Petitioner's warrantless arrest was permissible under § 1357(a)(2). Indeed, the arresting officers' stated reason for arresting Petitioner at his scheduled asylum appointment—that his paperwork was not prepared properly—evinces no basis for believing that the officers were unable to obtain an arrest warrant due to flight or danger concerns. That Petitioner's immediate release is warranted is further informed by considering the nature of Petitioner's interest in being free from unlawful arrest. Specifically, Petitioner has resided in the United States for nearly three decades and in that time he raised a family of U.S. citizen children, is gainfully employed with his own registered company, and has actively sought immigration relief through USCIS. Petitioner's longstanding history in the United States without any criminal record demonstrates that he retains a liberty interest in his freedom from detention that implicates protections under principles of due process. *See Padilla*, 2026 WL 2822044, at *11 (noting "decades of precedent establishing that noncitizens within the United States, legally or not, generally are within the protections of the Fifth Amendment's Due Process Clause."); *Ramazan M. v. Andrews*, No. 1:25-cv-01356-KES-SKO (HC), 2025 WL 3145562, at *5-6 (E.D. Cal. Nov. 10, 2025) ("Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute") (citing *inter alia Young v. Harper*, 520 U.S. 143, 147-49 (1997)).

Because under these circumstances Petitioner retains a liberty interest in his freedom from detention, the undersigned has considered the record evidence in the context of the due process framework set forth by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976). For the reasons that follow, pursuant to that framework, the undersigned concludes that Petitioner is

entitled to a pre-deprivation bond hearing. ~~at which the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community, such that physical custody is legally justified.~~[1]

First, Respondents either concede or do not dispute Petitioner's allegations that he has lived in the United States since 1997, and during that time has not accumulated any criminal history, was gainfully employed, raised a family of U.S. citizen children, and sought asylum relief. Measured against the three-factor *Mathews* test, these unrebutted facts and circumstances strongly suggest that Petitioner is entitled to the highest degree of due process to protect against the risk of the government erroneously curtailing his liberty, even accounting for the government's strong interest in enforcing the immigration laws.

Second, considering Petitioner was arrested at a scheduled asylum interview and there are no facts or evidence supporting a warrantless arrest, there is some indication that the contact and arrest were pretextual. But even if the encounter was not pretextual, there is nothing in the record to suggest that the government reasonably harbored an urgent need to arrest Petitioner without a pre-deprivation hearing. The prevailing rule is that the government must provide a noncitizen with a pre-deprivation hearing. *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty …"). A narrow exception to this default rule exists where "it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." *See Martinez Hernandez v. Andrews*, No. 1:25-cv-01035-JLT-HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025) (citing cases); accord *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1035–37 (N.D. Cal. 2025); *O.A.C.C. v. Wofford*, No. 1:25-cv-01652-DAD-CSK (HC), 2025 WL 3485221, at *4-5 (E.D. Cal. Dec. 4, 2025). Here, considering Petitioner's lack of criminal history and attendance at a scheduled asylum interview, and Respondents' failure to advance any argument that Petitioner presents any risk of flight or danger, it is not objectively reasonable to conclude that requiring Petitioner to

[1] These findings and recommendations correct an inadvertent reference in the original findings and recommendations (Doc. 6) to the applicable burden to be met at a bond hearing.

appear for a pre-deprivation hearing would have been impractical or otherwise incentivized his flight.

Separately, to the extent Respondents contend Petitioner presents a risk of flight based on his denial of bond, that argument is unavailing. The immigration judge's denial of bond appears to be an unsupported finding that Petitioner presents a risk of flight. The immigration judge acknowledged that Petitioner has a "lengthy period of residency in the United States" and has "various United States citizen family members" but concluded, without reason, that the immigration judge "is yet again left to speculate as to whether any of these family members would suffer exceptionally and extremely unusual hardship in the event of [Petitioner's] removal from the United States" such that Petitioner "is such a significant flight risk" that bond should be denied. (Doc. 5 at 5). Put simply, the immigration judge denied bond without meaningfully considering the enumerated factors under BIA precedent. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) ("To determine whether an alien is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent.") (citing *Matter of Guerra*, 24 I & N Dec. 37, 40 (Sept. 28, 2006)).

Accordingly, the undersigned will recommend that the petition for writ of habeas corpus be granted and that Respondents be ordered to immediately release Petitioner.

**<u>Conclusion and Recommendation</u>**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (Doc. 1) be GRANTED.
2. Respondents be ORDERED to release Petitioner immediately.
3. Respondents be ENJOINED AND RESTRAINED from re-detaining Petitioner unless they provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered.
4. Respondents be ORDERED to provide Petitioner with a copy of this Order upon his release.
5. The Clerk of the Court be DIRECTED to enter judgment in favor of Petitioner and close

this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondent, and the fact that the parties have briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require."). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **November 10, 2026**

UNITED STATES MAGISTRATE JUDGE